# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO



**Civil Action No. 18-cv-02911-GPG**

**Kevin M. Montgomery**
**Plaintiff,**

**vs.**

**Rick Raemisch, Executive Dir. of Prisons**
**Mike Romero, Warden at CTCF**
**Dino Williams, Captain at CTCF**
**Danny Eggers, Lieutenant at CTCF**
**Tammy Crane, Sargent at CTCF**
**Gilbert Montoya, Correctional Officer at CTCF**
**Robert Magnuson, Medical Doctor at CTCF**
**Jane Gilden, Nurse Practitioner (NP) at CTCF**
**B. Sparks, Lieutenant at (CDOC)**
**Defendant(s).**

---

## PRISONER'S AMENDED COMPLAINT

---

### A.    PLAINTIFF INFORMATION

1. **Kevin M. Montgomery** #56393, Colorado Territorial Correctional Facility (CTCF)
   P.O. Box 1010, Canon City, CO. 81215
   Plaintiff at all times relevant was confined by the Colorado Department of Corrections
   (CDOC) at Colorado Territorial Correctional Facility (CTCF) A Convicted and sentenced
   State prisoner.

### B.    DEFENDANT(S) INFORMATION

2. **Rick Raemisch,** Executive Director, 1250 Academy Park Loop, Colorado Springs, CO. 80910
   At the time the claim(s) in this complaint arose, was this defendant acting under color of state
   or federal law?  **X**  Yes ___ No Briefly explain:

1

He is the Executive Director of Prisons, employed by the Colorado Department of Correction and is responsible for the supervision and discipline of all correctional staff in CDOC and was notified of the existing problems with the Plaintiff and the other defendants and failed to act upon those complaints. The defendant at all relevant time were acting under color of law. He is being sued in his individual and official capacity.

3. **Mike Romero,** Warden, P.O. Box 1010, Canon City, CO. 81215
At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? __**X**__ Yes ___ No Briefly explain:

He is the Warden of CTCF and is in charge of reviewing all administrative appeals, complaints and the supervision and discipline of all correctional staff at CTCF and failed to act upon the complaint filed by Plaintiff and that failure to act allowed defendants to violate Plaintiff's Constitutional Rights which eventually caused him harm. He is being sued in his individual and official capacity.

4. **Dino Williams,** Captain, P.O. Box 1010, Canon City, CO. 81215
At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?__**X**__ Yes ___ No Briefly explain:

He is a correctional Captain at CTCF in charge of the medical services and responded to the Plaintiff's complaints. He is being sued in his individual and official capacity.

5. **Danny Eggers,** Lieutenant, P.O. Box 1010, Canon City, CO. 81215
At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?__**X**__ Yes ___ No Briefly explain:

He is a correctional lieutenant at CTCF and direct supervisor of T. Crane and G. Montoya and conspired with T. Crane and violated Plaintiff's Constitutional Rights to be free of pain and harm by interfering with Plaintiff's medical orders, issues and affairs and violated Federal HIPAA laws. He is being sued in his individual and official capacity.

6. **Tammy Crane,** Sargent, P.O. Box 1010, Canon City, CO. 81215
At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?__**X**__ Yes ___ No Briefly explain:

She is a correctional Sargent at CTCF and has willfully, intentionally and deliberately harassed, retaliated and interfered with Plaintiff's medical orders, violated Federal HIPAA laws, and caused Plaintiff to be placed in an unsafe living condition that caused him harm. She is being sued in her individual and official capacity.

7. **Gilbert Montoya,** Correctional Officer, P.O. Box 1010, Canon City, CO. 81215
At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law?__**X**__ Yes ___ No Briefly explain:

He is a correctional officer at CTCF whom conspired with Sargent T. Crane to harass, threaten, intimidate and interfere with Plaintiff's medical affairs, violated Federal HIPAA laws. He is being sued in his individual and official capacity.

8. **Robert Magnuson,** Medical Doctor, P.O. Box 1010, Canon City, CO. 81215
   At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? **X** Yes ___ No Briefly explain:

   He is the medical doctor at CTCF and has allowed himself to be influenced and/or coerced by security to revoke medical orders, one of which was issued by another doctor without first examining Plaintiff constituting to medical malpractice, deliberate indifference to a serious medical need and also violated Federal HIPAA laws. He is being sued in his individual and official capacity.

9. **Jane Gilden,** Nurse Practitioner, P.O. Box 1010, Canon City, CO. 81215
   At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? **X** Yes ___ No Briefly explain:

   She is the nurse practitioner (NP) at CTCF and has allowed herself to be influenced and/or coerced by security to revoke a medical order that she wrote making medical care inadequate, deliberate indifference to a serious medical need and also violating Federal HIPAA laws. She is being sued in her individual and official capacity.

10. **B. Sparks,** Lieutenant, P.O. Box 1010, Canon City, CO. 81215
    At the time the claim(s) in this complaint arose, was this defendant acting under color of state or federal law? **X** Yes ___ No Briefly explain:

    He was at the time of injury a correctional Sargent at CTCF in charge of housing assignments, and was aware of the danger to Plaintiff and failed to properly house Plaintiff accordingly to his ADA Accommodations. He is being sued in his individual and official capacity

## C. JURISDICTION

*Indicate the federal legal basis for your claim(s): (check all that apply)*

__X__ 42 U.S.C. § 1983 (state, county, and municipal defendants)

_____ *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) (federal defendants)

_____ Other: *(please identify)*

## D.    STATEMENT OF CLAIM(S)

**Claim 1:** Defendant Crane violated Plaintiff's 1st, 5th, 8th & 14th Amendment Rights of the United States Constitution to free speech and to petition the government without retaliation. Defendant Crane was deliberate indifference to a serious medical need by interfering with Plaintiff's medical orders. Defendant Crane denied Plaintiff due process by having his medical orders revoked without notice or the opportunity to defend.

**Supporting facts:**

1. Defendant Crane willfully, intentionally and deliberately obstructed and impeded Plaintiff's good-faith efforts to timely participate in CDOC offender Grievance Procedure designed to without interference, to allow Plaintiff to respectfully express his views and complaints.

2. On or about 9/28/17 Plaintiff filed a complaint against defendant T. Crane and Sgt. Martin for, "Falsifying Records/Discrimination" (Exhibits to Be Filed). Major Sandoval investigated Plaintiff's complaint and as a direct result of that written complaint defendant T. Crane and Sgt. Martin were then separated from working together in cell house 3. . Martin was then moved to cell house 1.

3. As a direct result of that written complaint Plaintiff has been met with a series of retaliatory actions from defendant T. Crane. Specifically, defendant T. Crane, deliberately, intentionally, and willfully interfered with Plaintiff's medical orders as a form of harassment, intimidation, and retaliation.

4. Defendant T. Crane over stepped her authority with the sole purpose to further harass and intimidate Plaintiff because of the filed complaint. On 2/16/18 @ approximately 12:30p.m. Plaintiff was called to the office by defendant D. Eggers who informed him that his doctor's orders had been revoked. The orders were, "Sit or Lay for Count" due to severe back pains.

5. Defendant T. Crane orchestrated the entire ordeal to have the doctor's orders revoked because she had a grudge against Plaintiff. Defendant T. Crane retaliated against Plaintiff for exercising his 1st Amendment Rights to file a complaint against her and in the process of doing so she denied Plaintiff due process by influencing and/or coercing medical staff to revoke its medical orders without giving Plaintiff the opportunity to defend those actions. Once the medical orders were written liberty interest was attached guarantying due process.

6. It was defendant T. Crane whom then influenced defendant D. Eggers the first time to contact medical staff (Dr. Magnuson) to revoke its orders, and it was defendant T. Crane whom contacted medical staff (NP J. Gilden) the second time, then influenced and/or coerced her to revoke her medical orders for the sole purpose to further harass, intimidate, and retaliate against plaintiff for exercising his 1st Amendment Rights to file a complaint.

4

## D.    STATEMENT OF CLAIM(S)

7. Defendant T. Crane was so determined to retaliate against Plaintiff that she interfered with his medical orders as a form of retaliation with total disregards of his medical conditions and/or medical needs. Not once but twice.

8. Defendant T Crane's continued actions clearly demonstrates her intent and doing so violated Plaintiff's 1st, 5th, 8th, and 14th Amendment Rights. She demonstrated retaliation, deliberate indifference to a serious medical need, denial of due process, and Cruel and Unusual Punishment.

9. Defendant T. Crane's actions to have Plaintiff's medical orders revoked constitutes deliberate indifference to a serious medical need. It was not her place to determine what medical care Plaintiff could and/or couldn't receive being that she doesn't possess a medical license.

10. On 2/17/18 Plaintiff then filed a complaint for, "HIPAA Violation/Medical Interference/Retaliation." (Exhibits to Be Filed). On 3/28/18 another doctor (NP Jane Gilden) rewrote the order a second time to sit for count. Defendant T. Crane then retaliated again, stating in front of other offenders, "Let's see how long that will last." Defendant T. Crane then contacted defendant NP J. Gilden and coerced her into revoking her orders.

11. On 5/15/18 just 6 days after Plaintiff and Capt. D. Williams had a meeting concerning his filed complaint of 2/17/18 for "HIPAA Violation/Medical Interference/Retaliation" Plaintiff was packed out to be sent to Denver Reception Diagnostic Center (DRDC) en-route to the hospital.

12. Now, protocol is that when an offender leaves the facility for a medical trip Colorado Department of Corrections (CDOC) is supposed to hold an offender's cell for at least up to 10 days.

13. Prior to leaving Plaintiff had spoken to the move Sargent, (.Griffen) about holding his cell at which time he responded, "I got you, don't worry." Plaintiff's cell was bottom bunk, which was consistent with his ADA Accommodations.

14. Upon returning from the hospital no more than 24 hrs. later Plaintiff had learned that Defendant T. Crane retaliated "again" against Plaintiff. Defendant T. Crane had Plaintiff moved out of the cell house all together and defendant T. Crane then filled that bed with another offender (K. Rogers) who was not bottom bunk restricted all for the sole purpose to retaliate against Plaintiff.

15. Plaintiff then discovered that defendant T. Crane stated to Sgt. Griffen on 5/15/18 in front of other offenders, "Fuck Montgomery, move that "Son-of-a-Bitch" out of CH-3." Clearly showing her intent.

## D.    STATEMENT OF CLAIM(S)

16. Sgt. Griffen did so and therefore Plaintiff ended up in cell house 5 (CH-5) and this clearly shows that she knowingly, intentionally and deliberately intended to deprive Plaintiff of his federally protected rights.

17. As a direct result of that move Plaintiff had no ADA compliant bed to return to due to her retaliation and Plaintiff ended up being housed in CH-5 which is a temporary unit which is not suitable to Plaintiff's ADA Accommodations.

18. Plaintiff would have never been housed in CH-5 if it wasn't for defendant T. Crane's continued retaliation, therefore it was defendant T. Crane's direct involvement that placed Plaintiff in a position to be harmed.

**Claim 2:**  Defendant D. Eggers violated Plaintiff's 5th, 8th, and 14th Amendment Rights of the United States Constitution. Defendant Eggers was deliberate indifference to a serious medical need by interfering with Plaintiff's medical orders and denied Plaintiff due process by having Plaintiff's medical orders revoked without notice or the opportunity to defend.

**Supporting facts:**

19. Defendant D. Eggers got involved with Plaintiff's medical orders at the request of defendant T. Crane to which he then contacted medical for the sole purpose to deny Plaintiff of his federally protected rights by influencing and/or coercing a medical decision.

20. Defendant D. Eggers contacted medical staff, discussed what was and/or wasn't in Plaintiff's medical file then influence and/or coerced a different doctor (Dr. R. Magnuson) to revoke said medical orders which were written by a different doctor without first examining Plaintiff.

21. On 2/16/18 @ approximately 12:30p.m. Plaintiff was called to the office by defendant D. Eggers who informed him that his doctor's orders had been revoked. When Plaintiff asked him who did it? Defendant D. Eggers replied, "Doctor Magnuson, and there's nothing left to talk about this conversation is over!"

22. Defendant D. Eggers violated Plaintiff's 5th & 14th Amendment Constitutional Rights by denying him the opportunity to defend his actions therefore denying Plaintiff due process as guaranteed by the United States Constitution. Once the medical order was written liberty interest was attached therefore guarantying due process. His actions are in violation of the United States Constitution.

23. Defendant D. Eggers' actions to have Plaintiff's medical orders revoked constitutes deliberate indifference to a serious medical need in violation of the 8th Amendment to the United States Constitution. It was not his place to determine what medical care Plaintiff could and/or could not receive constituting to Cruel and Unusual Punishment.

# D. STATEMENT OF CLAIM(S)

**Claim 3:** Defendant Dr. R. Magnuson violated Plaintiff's 5th, 8th & 14th Amendment Rights to the United States Constitution, he was deliberate indifference to a serious medical need by revoking medical orders at the request of custody to which one of the orders was written by a different doctor and he denied Plaintiff of due process by failing to give Plaintiff notice or the opportunity to defend.

**Supporting facts:**

24. Defendant Dr. R. Magnuson revoked Plaintiff's medical orders at the direction of custody staff (Lt. D. Eggers) to which the order was written by a different doctor without first examining Plaintiff nor did he give Plaintiff notice or an opportunity to defend those actions. .

25. Clearly that alone constitutes medical malpractice on behalf of medical staff and a violation of HIPAA being that Plaintiff never gave written consent to anyone to discuss his medical affairs.

26. Defendant Dr. R. Magnuson was deliberate indifference to Plaintiff's serious medical need in violation of the 8th Amendment to the United States Constitution and Defendant Dr. R. Magnuson violated Plaintiff's due process rights pursuant to the 5th & 14th Amendment to the United States Constitution.

27. Liberty interest was attached when the order was written and that order was written by a different doctor and defendant Dr. R. Magnuson failed to examine Plaintiff prior to revoking the medical order constituting to cruel and unusual punishment and medical malpractice.

28. On 7/20/18 defendant Dr. R. Magnuson wrote an order for meals to be delivered to Plaintiff's cell due to weakness/fall risk/s/p concussion.

29. On 7/31/18 defendant T. Crane once again had an issue concerning Plaintiff's medical orders. She had an attitude with Offender Care Assistance (OCA) Bustillio for bringing Plaintiff's food to him.

30. On 8/9/18 Plaintiff's food was late, tampered with, incomplete and served in an unsanitary manner which was unacceptable to Plaintiff.

31. Plaintiff then went to the chow hall to have his meal completed and served properly. Defendant T. Crane was standing out in front of CH-7 at the time and defendant G. Montoya was in front of the mid-way office. One of the two radioed for Plaintiff to be stopped.

32. Defendant Dr. R. Magnuson was contacted by custody staff again and he revoked medical orders once again based on misguided information without first reviewing this matter with his patient which is the Plaintiff. Denying Plaintiff due process once again.

## D.    STATEMENT OF CLAIM(S)

33. On 8/11/18 @ approximately 6:48am. Sgt. Pankey came to Plaintiff's cell and told him that his doctor's orders had been revoked again. Without a hearing and/or written notification or the opportunity to defend it. This makes it the third time that custody has interfered with Plaintiff's medical orders after which they were instructed not to by defendant Capt. D. Williams. All was done so out of spite for the sole purpose to continue to harass and intimidate Plaintiff.

34. Defendant Dr. R. Magnuson actions makes this the second time he has violated his patient's rights and showed deliberate indifference to his serious medical needs. All to satisfy custody and their revengeful agenda.

35. On 8/23/18 Plaintiff had discovered through Nurse III Vani that defendant Dr. R. Magnuson was contacted by custody and was instructed to revoke its orders. This last act makes it the second time that defendant Dr. R. Magnuson has revoked medical orders at the request of custody without due process and the third time all together that custody has interfered with Plaintiff's medical orders.

36. It was said and agreed to by defendant Capt. D. Williams that custody "will not" get involved with medical and their orders but here we are once again for the third time that custody has violated Plaintiff's Constitutional Rights and interfered with Plaintiff's medical orders with total disregards of his medical needs showing deliberate indifference to a serious medical need.

37. Plaintiff may not be entitled to the "full panoply of rights" nonetheless he may not be deprived of life, liberty, or property without due process of law.

38. By custody contacting medical and influenced and/or coerced medical (Dr. R. Magnuson) to revoke its orders without first due process violates Plaintiff's Constitutional Rights under the 5th &14th Amendment to the U.S. Constitution. Defendant Dr. R. Magnuson never spoke to Plaintiff before making his decision to revoke his orders.

39. Defendant Dr. R. Magnuson's decisions was based solely upon the recommendation of a custody staff whom does not have a medical license and whom had an axe to grind with the Plaintiff for exercising his Constitutional Rights under the 1st Amendment.

40. That right is protected under the United States Constitution. He never once prior to revoking any and all medical orders examined Plaintiff constituting to medical malpractice nor did he give Plaintiff an opportunity to defend those actions.

## D.    STATEMENT OF CLAIM(S)

41. At no time before, during, and/or after did Doctor R. Magnuson discuss with Plaintiff first about his needs and/or medical issues before revoking any and all medical order, therefore denying Plaintiff due process of law.

42. Defendant Dr. R. Magnuson was deliberate indifference to a serious medical need in violation of the 8th Amendment to the United States Constitution.

43. All it took was one phone call from custody to have defendant Dr. R. Magnuson maliciously, intentionally, and deliberately agree to violate Plaintiff's Constitutional Rights.

44. Plaintiff was never given written notice nor afforded the opportunity to defend those actions. Plaintiff never gave written consent to anyone to discuss his medical issues therefore medical staff violated Federal HIPAA laws again and again Plaintiff was denied due process of law.

**Claim 4:** Defendant J. Gilden violated Plaintiff's 5th, 8th & 14th Amendment Rights, to the United States Constitution, denial of due process and was deliberate indifference to a serious medical need by revoking medical orders at the request of custody staff defendant T. Crane.

**Supporting facts:**

45. Defendant NP Jane Gilden was contacted by defendant T. Crane whom then coerced and/or influenced her to revoke her medical orders.

46. Defendant NP Jane Gilden did so without giving Plaintiff notice or the opportunity to defend those actions nor did Plaintiff give written consent to anyone to discuss Plaintiff's medical issues.

47. Both medical staff and custody were "again" in violation of HIPAA due to the fact that Plaintiff never gave written consent to anyone to discuss what was and/or wasn't in his medical file. Medical personnel is not allowed to discuss with a third party non-medical staff without first written consent nor to take advice from non-medical staff.

48. The written complaint was then answered by defendant Captain D. Williams through defendant Warden Mike Romero whom both had prior knowledge of the continued harassment and Constitutional violations. Defendant Capt. D. Williams and Plaintiff had a meeting and came to an agreement.

49. And that agreement was, that defendant T. Crane or any other custody staff was not allowed to get involved with Plaintiff's medical affairs nor harass Plaintiff any further and that medical was to stand by its decisions and not be influenced by custody.

50. This took place on 5/9/18 and at which time Plaintiff was then called back down to medical and defendant NP Jane Gilden rewrote a third order to sit for count.

51. Plaintiff then gave a copy of that order to defendant T. Crane at which time Plaintiff voiced his concerns and instructed her to leave him alone. Defendant T. Crane was visibly upset but was advised by defendant Captain D. Williams to leave Plaintiff alone and to stay away from Plaintiff's medical affairs.

**Claim 5:** Defendant Sparks violated Plaintiff's 8th Amendment Rights, was deliberate indifference to a serious medical need. Unnecessary and wanton infliction of pain under the 8th Amendment of the United States Constitution. Also Violating ADA 42 U.S.C. § 12132 by failing to properly house Plaintiff pursuant to his ADA Accommodations.

**Supporting facts:**

52. The Plaintiff is a person as defined under ADA 42 U.S.C. § 12102, with severe physical disabilities, multiple medical restrictions and ADA Accommodations. Who is, has been and will be discriminated against and deprived of such needs solely on the basis of the Plaintiff's disabilities, and medical restrictions.

53. Plaintiff was discriminated against his needs in receiving the rights, privileges accorded to other inmates, so to be housed in CTCF CH-5 in order to "Accommodate the Facility" for placement policies above the needs of the Plaintiff violated ADA 42 U.S.C. § 12132.

54. Plaintiff's ADA Accommodations are, low bunk, low tier and elevator access where available due to an unstable gait. Plaintiff was denied proper housing pursuant to his ADA Accommodations and CDOC staff was fully aware of his medical restrictions.

55. Plaintiff voiced his concerns to defendant B. Sparks whom was in charge of housing at CTCF CH-5. He knew of the known dangers and refused to act. He was deliberate indifference to a serious medical need.

56. Cell house 5 does not have an elevator and it's only accessible through the use of stairs for which it is unsuitable to Plaintiff's physical needs due to an unstable gait. There is no way possible to avoid those stairs so therefore Plaintiff should never have been housed there.

57. In cell house 5 (CH-5), inmates have to go upstairs for the following reasons, (1) To get their food, (2) To use the phone, (3) To take a shower and (4) To take their medication. In a nutshell, there is no way possible to avoid the use of the stairs no matter what floor you're assigned to. So there was no legitimate reason Plaintiff should have been housed there which was inconsistent with Plaintiff's ADA Accommodations.

## D.    STATEMENT OF CLAIM(S)

58. Plaintiff was then sent to cell house 1 back around. Sgt. Martin and Sgt. Grooms whom both has issues with him because of the first complaint filed on 9/28/17 which ended having Sgt. Martin moved.

59. That's why Plaintiff was housed in CH-3 to begin with. Plaintiff wasn't in the unit no more than 15 min. before he had a run-in with Sgt. Grooms and Sgt. Martin over a button up shirt.

60. Due to Plaintiff's most recent medical diagnosis on 5/15/18 which is a tumor in his lower spine and because of his mental state at that time Plaintiff was fed up with the constant harassments and retaliation and had contemplated suicide.

61. Plaintiff was then placed in segregation for 3 days then sent back to cell house 5 which again was not suitable to his ADA Accommodations. Which again are low-bunk, low tier restrictions and elevator access due to an unstable gait. CH-5 does not have an elevator.

62. Plaintiff voiced his concerns and fears once again but those fears and concerns were ignored once again by housing staff defendant B. Sparks. Again defendant B. Sparks acted with deliberate indifference to a serious medical need.

63. CDOC and its staff knew of the danger and failed to act. Plaintiff even showed documentation to defendant B. Sparks that he should not be housed there which proves that he had prior knowledge of a potential danger and he just didn't care. Housing restrictions were also listed on CDOC computer system so he can't deny not knowing.

64. In-fact cell house 5 (CH-5) staff defendant B. Sparks ignored Plaintiff's concerns and acted with total disregards and was deliberate indifference to a serious medical need constituting to cruel and unusual punishment.

65. Defendant B. Sparks refused to properly house Plaintiff accordingly to his ADA Accommodations by trying to justify his actions by stating, "You're on the bottom tier and on a bottom bunk." A bottom tier and a bottom bunk does not justify the housing being that you still have to go up and down stairs regardless of what tier you're on. There is no way possible to avoid those stairs. CH-5 is not structurally designed for mobility impaired inmates.

66. Defendant B. Sparks failed and/or refused to recognize that there were stairs that were an obstacle to Plaintiff and his physical needs and that he couldn't avoid those stairs regardless of what floor he was assigned to and he knew that there was a risk of injury if Plaintiff was forced to go up and down a flight of stairs.

## D.    STATEMENT OF CLAIM(S)

67. Plaintiff specifically told defendant B. Sparks that he was afraid of the stairs and that's the reason they (Custody Staff) allowed Plaintiff to shower last. Therefore they (Custody Staff) knew of a potential danger and failed to act.

68. CH-5 was not in compliance with Plaintiff's ADA Accommodations therefore denying Plaintiff's rights to programs, services or activities on the basis of his disability and through the unlawful placement violated Plaintiff's rights pursuant to ADA 42 U.S.C. § 12132 regulations and the failure to act eventually caused Plaintiff to be injured.

69. As a direct result of the constant harassment and retaliation from defendant T. Crane, she, both directly and indirectly caused Plaintiff to be placed in an unsafe living condition that caused him to be physically injured.

70. Defendant B. Sparks failed to house Plaintiff accordingly to his ADA Accommodations. Considering his physical limitations and restrictions, and such the facility failed to meet his needs as a handicapped person.

71. CDOC medical staff and housing officers had prior knowledge of Plaintiff's physical limitations and failed to protect him and knew that CH-5 was not safe and was unsuitable for him and yet did nothing in spite of his many complaints.

72. CDOC acting through its employees, failed to exercise that degree of care it reasonably should have exercised, and was negligent and failed to exercise ordinary diligence, in causing Plaintiff to be confined to CH-5 considering Plaintiff's physical limitations and the activities in which he reasonably would be expected to be engaged.

73. Such failure and negligence constituted a failure on the part of the CDOC to act reasonably to provide suitable quarters and provide for the safekeeping, care, and protection of Plaintiff.

74. Such conduct on the part of The State of Colorado, through the Colorado Department of Corrections, proximately caused Plaintiff to suffer physical pain and mental anguish.

75. Defendant B. Sparks failed to provide the Plaintiff reasonable Accommodations in violation of Title II of the Americans with Disabilities Act (ADA) 42 U.S.C. §12132.

76. Defendant B. Sparks violated Plaintiff's 8th Amendment Rights to the United States Constitution to be free from pain and harm and was Deliberate Indifference to a serious medical need causing Plaintiff to suffer an accident that caused physical injury.

## D.     STATEMENT OF CLAIM(S)

77. The housing unit at which the Plaintiff had been confined was not suitable for a person suffering from his physical afflictions, that because of the unsuitable conditions of the housing unit he suffered an accident that caused him to sustain bodily injury damages.

78. The unsuitability of that housing unit caused him to suffer other damages in the nature of inconvenience, pain, and anguish.

79. On June 1, 2018 at approximately 9:30 pm while coming back from the shower which is located upstairs, Plaintiff fell down a flight of stairs.

80. Hitting his right shoulder, right knee, injuring his lower back, neck and landing on his head. Plaintiff was knocked on conscious and continues as of this date to suffer pain and anguish sustained in the fall, concussion and loss of memory.

81. Throughout Plaintiff's stay in cell house 5 he was required to climb stairs and other heights and walk long distances in order to do those things that he reasonably would be expected to do as an inmate at that facility.

82. The Plaintiff has and continues to be subjected to repeated injuries and harms as known preventable injuries because of deprived medical restrictions and ADA Accommodations which created unsafe conditions disrupting the Plaintiff's ability for independence and safety.

83. Such failure and negligence constituted a failure on the part of the CDOC to act reasonably to provide suitable quarters and provide for the safekeeping, care, and protection of Plaintiff, who, at all times pertinent to this litigation, has been a person convicted of an offense against The State of Colorado. Such conduct on the part of The State of Colorado through the Colorado Department of Corrections (CDOC), proximately caused Plaintiff to suffer physical pain and mental anguish.

**Claim 6:** Defendant G. Montoya violated Plaintiff's 1st Amendment Rights of the United States Constitution to free speech and to petition the government without retaliation by threatening and harassing Plaintiff.

**Supporting facts:**

84. Since the drafting of this complaint Plaintiff has been met with threats from defendant G. Montoya. On 7/29/18 @ approximately 1:28pm defendant G. Montoya whom was also moved out of cell house 3 and re-assigned to security detail.

## D.    STATEMENT OF CLAIM(S)

85. Defendant G. Montoya came to Plaintiff's unit CH-3 and directly to Plaintiff's cell and threatened him. Stating, "Since you like filing complaints I'll come back and fuck with you some more, so watch out." Plaintiff reported this threat to Lt. D. Eggers, Lt. Heisch, Capt. Valdez and other officials.

86. Plaintiff again believes that he's being retaliated against by the named defendant(s) for exercising his Constitutional Rights.

87. Plaintiff's mental state has been highly affected by the constant harassments and threats by staff and he has filed complaints to no avail. Plaintiff feels trapped at this point.

88. What the Plaintiff is going through constitutes to Cruel and Unusual Punishment in violation of Plaintiff's 8th Amendment Rights of the United States Constitution.

89. All of these actions stems from Plaintiff exercising his 1st Amendment Rights to redress the government and in doing so he has been denied Due Process in violation of the 5th & 14th Amendment to the United States Constitution by the named defendant(s)

90. Plaintiff also no longer have faith or confidence in the medical services being that the level of care is dictated by custody whom does not have a medical license and yet they (Custody) are making all the decisions as to the level of care given and to whom it is given, therefore making medical care in CDOC inadequate.

91. On 6/21/18 @ approximately 8:50 a.m. Plaintiff had a conversation with Sgt. Griffen concerning that particular move that caused Plaintiff to be housed in CH-5 and Sgt. Griffen stated that he was put under the impression by defendant T. Crane that Plaintiff wasn't coming back to the facility or he wouldn't have moved him.

92. So therefore it was the retaliatory actions of defendant T. Crane whom constantly harassed and retaliated against Plaintiff for exercising his Constitutional Rights which eventually ended him to being housed in an unsuitable unit CH-5 that caused him to be injured.

93. Had it not have been for defendant T. Crane's constant harassment and retaliation, Plaintiff would have never been placed in CH-5 and/or put in a dangerous situation to be caused harm and defendant B. Sparks' failure to properly house Plaintiff in spite of the known danger contributed to Plaintiff's injuries.

94. Both defendants showed deliberate indifference to a serious medical need and medical necessity is defined as services reasonable and necessary to protect life, prevent significant illness or disability or alleviate severe pain.

# D.    STATEMENT OF CLAIM(S)

**Claim 7:**  Defendants Executive Dir. Rick Raemisch, Warden Mike Romero, Capt. D. Williams and Lt. D. Eggers, all violated Plaintiff's 1st & 8th Amendment Rights to the United States Constitution.

**Supporting facts:**

95. Defendant Executive Dir. Rick Raemisch was made aware of the constant harassments, medical interference and threats by defendants T. Crane and G. Montoya.

96. Defendant Executive Dir. Rick Raemisch failed and/or refused to intervene and to take disciplinary and/or other actions to curb the known pattern of abuse, harassment, retaliation and mental abuse which eventually caused Plaintiff to suffer an injury. The failure and/or refusal to act on the part of defendant Executive Dir. Rick Raemisch contributed to Plaintiff's injuries.

97. Defendant Warden Mike Romero was made aware of the constant harassments, medical interference and threats by defendants T. Crane and G. Montoya and he failed and/or refused to intervene and to take disciplinary and/or other actions to curb the known pattern of abuse, harassment, retaliation and mental abuse which eventually caused Plaintiff to suffer an injury. The failure and/or refusal to act on the part of defendant Warden Mike Romero contributed to Plaintiff's injuries.

98. Defendant Capt. D. Williams was made aware of the complaints through defendant Warden Mike Romero and responded to the complaints against medical and custody for the constant harassments, medical interference and threats by defendants T. Crane and G. Montoya and he failed and/or refused to intervene and to take disciplinary and/or other actions to curb the known pattern of abuse, harassment, retaliation and mental abuse which eventually caused Plaintiff to suffer an injury. The failure and/or refusal to act on the part of defendant Capt. D. Williams contributed to Plaintiff's injuries.

99. Defendant Lt. D. Eggers was made aware and was directly involved with the constant harassments, medical interference and threats by defendants T. Crane and G. Montoya and he failed and/or refused to intervene and to take disciplinary and/or other actions to curb the known pattern of abuse, harassment, retaliation and mental abuse which eventually caused Plaintiff to suffer an injury. The failure and/or refusal to act on the part of defendant Lt. D. Eggers contributed to Plaintiff's injuries.

## E.     PREVIOUS LAWSUITS

Have you ever filed a lawsuit, other than this lawsuit, in any federal or state court while you were incarcerated?  ___ Yes _X_ No (*check one*).

## F.     ADMINISTRATIVE REMEDIES

Is there a formal grievance procedure at the institution in which you are confined?

    _X_ Yes ___ No (*check one*)

Did you exhaust administrative remedies?

    _X_ Yes ___ No (*check one*)

Plaintiff exhausted his administrative remedies before filing this complaint. In fact Plaintiff filed several complaints which some were answered and some were not and the issues were thought to have been resolved with respects to all claims and all defendants.

## G.    REQUEST FOR RELIEF

1.  The actions of defendants T. Crane and G. Montoya for the continued harassing, retaliation, threats and medical interference without need and/or provocation which eventually caused Plaintiff to be placed in harm's way were done maliciously, sadistically and intentionally constituting to Cruel and Unusual Punishment in violation of the 1st and 8th Amendment Rights of the United States Constitution.

2.  The actions of defendants T. Crane and G. Montoya, Lt. D. Eggers and Dr. R. Magnuson, did willfully, intentionally, and deliberately violated Plaintiff's 1st Amendment Rights to file a complaint.

3.  The actions of defendants Lt. D. Eggers, T. Crane and G. Montoya for contacting medical to coerce and/or influenced its medical decisions without affording Plaintiff the opportunity to defend those actions violated Plaintiff's 5th & 14th Amendment Rights, Due Process Clause. "Notice and opportunity to defend."

4.  The actions of defendants Dr. R. Magnuson and NP Jane Gilden for discussing what was and/or wasn't in Plaintiff's medical file by violating Federal HIPAA laws violated Plaintiff's rights to privacy and to be free from pain and harm which constitutes to deliberate indifference to a serious medical need.

5.  The actions of defendants Dr. R. Magnuson and NP Jane Gilden for revoking their orders at the request of custody constitutes to medical malpractice and also denied the Plaintiff due process of law in violation of the 5th & 14th Amendment to the United States Constitution.

6.  The actions of defendants Dr. R. Magnuson and NP Jane Gilden also violated Plaintiff's 8th Amendment Rights, Cruel and Unusual Punishment causing Plaintiff to be in physical pain and mentally distraught.

7.  The failure of defendants Dr. R. Magnuson and NP Jane Gilden to provide a medical examination prior to and after they revoked medical orders and failure to provide follow-up examination and treatment from the fall and physical therapy for his back, neck, and right knee, concussion constitutes deliberate indifference to the Plaintiff's serious medical needs in violation of the 8th Amendment to the United States Constitution.

8.  The failure of defendants Dr. R. Magnuson and NP Jane Gilden to provide follow-up examination and treatment from the fall and physical therapy for his back, neck, and right knee, concussion constitutes the tort of negligence under the law of Colorado.

9.  The failure of defendant B. Sparks to adhere to Plaintiff's ADA Accommodations and act upon a known danger to Plaintiff's physical health constituted to deliberate indifference to the Plaintiff's serious medical needs, and contributed to and proximately caused the above-described violation of the 8th Amendment Rights and caused physical injury to Plaintiff by violating Title II of the Americans with Disabilities Act (ADA) 42 U.S.C. §12132

## G.     REQUEST FOR RELIEF

10. The failure of defendants, Executive Dir. Rick Raemisch, Warden Mike Romero, Capt. D. Williams and Lt. D. Eggers to intervene and to take disciplinary and/or other actions to curb the known pattern of abuse, harassment, retaliation and mental abuse by defendants T. Crane and G. Montoya constituted to deliberate indifference to the Plaintiff's and other prisoners safety, and contributed to and proximately caused the above-described violation of the 8th Amendment Rights which caused physical injury to Plaintiff.

A. Demand a jury trial.

B. Issue a declaratory judgment stating that:

1) The mental abuse and subsequently the physical injury suffered by Plaintiff at the directions, both directly and indirectly of defendants T. Crane and G. Montoya violated the Plaintiff's rights under the 8th Amendment to the United States Constitution and constituted deliberate indifference which caused physical injury to Plaintiff.

2) The actions of defendants T. Crane, G. Montoya and Lt. D. Eggers, with a culpable state of mind did knowingly, willfully and intentionally acted with conspiracy to deprive Plaintiff of his Federally protected rights in violation of the United States Constitution.

3) The constant harassment of Plaintiff by defendants T. Crane, G. Montoya, and Lt. D. Eggers through medical for retaliatory purposes for exercising his Constitutional Rights violated Plaintiff's 1st Amendment Rights to redress the government.

4) Defendants T. Crane, G. Montoya, and Lt. D. Eggers actions were done maliciously, intentionally and deliberately and the offending officials acted with a sufficiently culpable state of mind and were reckless and/or callously indifference to federally protected rights.

5) Defendants Dr. R. Magnuson and NP J. Gilden actions in failing to provide adequate medical care for the Plaintiff violated and continue to violate, the Plaintiff's rights under the 8th Amendment to the United States Constitution, and failing to confer with Plaintiff before taking actions also violated the Plaintiff's rights under the Due Process Clause of the 5th &14th Amendment to the United States Constitution.

6) Defendants Dr. R. Magnuson and NP J. Gilden actions for discussing Plaintiff's medical issues with non-medical staff violated Plaintiff's rights to privacy under Federal HIPAA Laws and for receiving orders from non-medical staff constitutes to medical malpractice.

7) Defendants Executive Dir. Rick Raemisch, Warden Mike Romero, Capt. D. Williams and Lt. D. Eggers' failure and/or refusal to intervene and/or to take actions to curb the known retaliation, harassment and mental abuse of prisoners violated the Plaintiff's rights under the 8th Amendment to the United States Constitution and constituted to battery under state law.

C. Issue an injunction ordering defendants Dr. R. Magnuson, NP J. Gilden and/or their agents to :

## G.     REQUEST FOR RELIEF

1) Immediately request this Court to **ORDER** medical to stand by its orders and not be influenced and/or coerced by custody to change its orders.

2) Immediately request this Court to **ORDER** medical to afford all prisoners "Due Process" before changing and/or revoking any and all medical orders at the request of custody.

3) Immediately request this Court to **ORDER** medical to arrange for the Plaintiff's need for physical therapy or other follow-up medical treatment to be evaluated by a medical practitioner with expertise in the treatment and restoration and function of spinal injuries, knee injuries, neck injuries and head injuries.

4) Immediately request this Court to **ORDER** medical personnel to stop discussing any and "all" medical issue of an inmate with non-medical staff without first written consent of the individual that's involved pursuant to HIPAA.

5) Immediately request this Court to **ORDER** medical to arrange for the Plaintiff to be scheduled and seen for an MRI, X-Rays and any other medical examinations needed.

6) Immediately request this Court to **ORDER** medical to carry out without delay the treatment directed by such medical practitioner.

7) Immediately request this Court to **ORDER** CDOC to stop accepting "Mobility Impaired" offenders to CTCF Cell House 5 (CH-5) until CTCF CH-5 is ADA compliant.

D. Issue an injunction ordering defendants T. Crane, G. Montoya and Lt. D. Eggers and its agents to:

1) Immediately request this Court to **ORDER** custody to stop contacting medical with the sole purpose of interfering with inmates medical affairs as a form of harassment and retaliation.

2) Immediately request this Court to **ORDER** Stop the harassing, threatening, verbal abuse and retaliating against inmates whom exercises their Constitutional Rights to file complaints against them.

3) Immediately request this Court to **ORDER** CDOC employees, contract workers, or volunteers under their authority to stop and reframe from any further retaliatory, discriminatory actions, large or small, against Plaintiff.

4) Immediately request this Court to **ORDER** Rick Raemisch and Clinical Services employees, contract workers, or volunteers under their authority to preserve, any and all, CDOC communications (i.e., electronic, paper) E-Mails, incident reports, chrons, notes, memos, videos, offender grievances, medical records (i.e., cat scans, MRI's, medical encounters, x-rays and any and all findings, medical test, doctor notes, etc.) to include, but not limited to CDOC Health Service Administrator's E-Mails, notes, medical facility orders, memos, chrons regarding offender Kevin M. Montgomery #56393.

# G. REQUEST FOR RELIEF

5) Immediately request this Court to **ORDER** Correctional Health Partners and CDOC Clinical Services employees, contract workers, or volunteers under their authority to completely upload into CDOC Clinical Services Electronic Computer System, Plaintiff's entire medical record (paper) in its entirety.

6) Plaintiff have no plain, adequate or complete remedy at law to redress the wrongs described in all the complaints herein. Plaintiff has and will continue to be irreparably injured by the conduct of the Defendants unless this Court grants declaratory and injunction relief Plaintiff seeks.

E. Request pre and post judgment interest.

F. Request all cost/fees associated with the filing of this case (i.e., to include but not limited to filing cost/fees, service costs/fees, photocopy cost/fees, postage cost/fees, jury cost/fees etc.) without delay be immediately credited back into Plaintiff's CDOC Inmate Trust Fund Account without deductions, along with applicable interest.

G. Plaintiff request that CDOC be restrained from taking percentages of awarded claims from Plaintiff's Inmate Trust Fund Account, to show punishment of such awards.

H. Award **Compensatory Damages** in the following amounts:

1. $350,000 (U. S. Dollars) jointly and severally against defendants, T. Crane, B. Sparks, G. Montoya and Lt. D. Eggers for malicious abuse of power, the physical and emotional injuries sustained as a result of the plaintiff's fall due to the retaliatory actions of said defendants.

2. $350.000 (U. S. Dollars) jointly and severally against defendants T. Crane, B. Sparks, G. Montoya and Lt. D. Eggers for the punishment, including deprivation of liberty and amenity, and emotional injury resulting from their denial of due process in connection with the interference of plaintiff's medical orders and the illegal placement of plaintiff that caused said injury and for conspiracy against rights in violation of 18 USCS § 241 and the violation of Plaintiff's 8th Amendment Rights to the United States Constitution.

3. $250,000 (U. S. Dollars) jointly and severally against defendants, Dr. R. Magnuson and NP J. Gilden for the physical and emotional injury resulting from their failure to provide adequate medical care and denial of due process to the plaintiff. And for violating Plaintiff's 8th Amendment Constitutional Rights and his rights to privacy under the Federal HIPAA law.

4. $150.000 (U. S. Dollars) jointly and severally against defendants, Executive Dir. Rick Raemisch Warden Mike Romero, Capt. D. Williams and Lt. D. Eggers for the punishment, including deprivation of liberty and amenity, and emotional injury resulting from their denial of due process 8th Amendment violation and failure to intervene and to curb the known harassment and retaliation in connection with the interference of plaintiff's medical orders and allowing Plaintiff to be placed in harm's way.

## G.  REQUEST FOR RELIEF

I.  Award **Punitive Damages** in the following amounts:

1.  $500,000 (U. S. Dollars) each against defendants, T. Crane, B. Sparks, G. Montoya and Lt. D. Eggers.

2.  $350,000 (U. S. Dollars) each against defendants, Dr. R. Magnuson and NP J. Gilden.

3.  $250,000 (U. S. Dollars) each against defendants, Executive Dir. Rick Raemisch Warden Mike Romero and Capt. D. Williams.

J.  Grant such other relief as it may appear that plaintiff is entitled.

K.  Award Nominal Damages in the amount of:

$1.00 (U.S. Dollars)

## H.  PLAINTIFF'S SIGNATURE

I declare under penalty of perjury that I am the Plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Kevin Montgomery)

5-8-19

(Date)

Colorado Department of Corrections
Name Ludwickson J Inmate
Register Number J163303
Unit
Box Number 1000
City, State Elmonth CO
                    81635

Legal Mail

United States District Court
Alfred A. Arraj US Courthouse
901 19th Street
Denver, CO 80294

neopost
04/03/2019
US POSTAGE $01.45⁰
FIRST-CLASS MAIL
ZIP 81212
041L11241745



DOC# OFFENDER LAST NAME INT
81897 Hababelul Ba...
RECEIVED/LAST NAME IDS INT
J P N R S 1/1/85

FACILITY
D.T.A.
DATE REC'D
4/3-19

QUALITY PARK
9 x 12