IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-02911-LTB-GPG

KEVIN M. MONTGOMERY,

    Plaintiff,

v.

RICK RAEMISCH, Executive Dir. Of Prisons,
MIKE ROMERO, Warden at CTCF,
DINO WILLIAMS, Captain at CTCF,
DANNY EGGERS, Lieutenant at CTCF,
TAMMY CRANE, Sargent at CTCF,
GILBERT MONTOYA, Correctional Officer at CTCF,
ROBERT MAGNUSON, Medical Director at CTCF,
JANE GILDEN, Nurse Practitioner at CTCF,
B. SPARKS, Lieutenant,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter comes before the Court on the Second Amended Prisoner Complaint (ECF No. 15)[1]. The matter has been referred to this Magistrate Judge for recommendation (ECF No. 17)[2]. The Court has considered the entire case file, the

---

[1] "(ECF # __)" is an example of the convention I use to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). I use this convention throughout this Recommendation.

[2] Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72(b). The party filing objections must specifically identify those findings or recommendations to which the objections are being made. The District Court need not consider frivolous, conclusive, or general objections. A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations. *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1). Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days

1

applicable law, and is sufficiently advised in the premises. This Magistrate Judge respectfully recommends that the Amended Prisoner Complaint (ECF No. 15) be dismissed in part and the remaining claims be drawn to a presiding judge.

**I.     Background**

Plaintiff, Kevin M. Montgomery, is in the custody of the Colorado Department of Corrections, currently incarcerated at the Colorado Territorial Correctional Facility in Canon City, Colorado. On November 13, 2018, he filed *pro se* a Prisoner Complaint (ECF No. 1), and a Motion To: File Without Payment of Filing Fee Pursuant to C.R.S. § 13-17.5-103 (ECF No. 3). On December 4, 2018, in response to a Court Order to Cure Deficiencies, Plaintiff filed a Prisoner's Motion and Affidavit for Leave to Proceed Pursuant to 28 U.S.C. § 1915. (ECF No. 7).

On January 23, 2019, the Court ordered Mr. Montgomery to file an amended prisoner complaint. (ECF No. 11). The order to amend included specific instructions for Mr. Montgomery to file his amended prisoner complaint on the current court-approved form, without re-ordering the sections, adding additional sections, and/or making changes to any of the sections in the court-approved form. (*Id.* at 7).

In response, on February 22, 2019, Plaintiff filed an Amended Prisoner Complaint (ECF No. 12), and a Motion Requesting Appointment of Counsel (ECF No. 13). However, despite the specific instructions in the Court's January 23, 2019 Order, the Amended Prisoner Complaint was still not on the court-approved form. On March 21, 2019, the Court again ordered Plaintiff to use the current court-approved Prisoner

---

after being served with a copy may bar the aggrieved party from appealing the factual findings of the Magistrate Judge that are accepted or adopted by the District Court. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

2

Complaint form, in the proper format, without re-ordering or changing sections, and without inserting sections that are not part of the court-approved form. (ECF No. 14).

On April 5, 2018, Plaintiff filed a Second Amended Prisoner Complaint on the court-approved form. (ECF No. 15). The Court must construe Plaintiff's Second Amended Prisoner Complaint liberally because he is not represented by an attorney. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not act as an advocate for a *pro se* litigant. *See Hall*, 935 F.2d at 1110.

Plaintiff was granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. (ECF No. 8). Under § 1915(e)(2)(B)(i), the Court must dismiss the action or any claims if the claims are frivolous or malicious. A legally frivolous claim is one in which the plaintiff asserts the violation of a legal interest that clearly does not exist or asserts facts that do not support an arguable claim. *See Neitzke v. Williams*, 490 U.S. 319, 327-28 (1989).

## II. Second Amended Prisoner Complaint

Plaintiff names nine defendants and asserts the following seven claims:

1. "Defendant Crane violated Plaintiff's 1st, 5th, 8th and 14th Amendment Rights of the United States Constitution to free speech and to petition the government without retaliation. Defendant Crane was deliberate [sic] indifference to a serious medical need by interfering with Plaintiff's medical orders. Defendant Crane denied Plaintiff due process by having his medical orders revoked without notice or the opportunity to defend."

2. "Defendants Eggers violated Plaintiff's 5th, 8th, and 14th Amendment Rights of the United States Constitution. Defendant Eggers was deliberate [sic] indifference to a serious medical need by interfering with Plaintiff's medical orders and denied Plaintiff due process by

3

having Plaintiff's medical orders revoked without notice or the opportunity to defend."

3. "Defendants Dr. R. Magnuson violated Plaintiff's 5th, 8th, & 14th Amendment Rights to the United States Constitution, he was deliberate [sic] indifference to a serious medical need by revoking medical orders at the request of custody to which one of the orders was written by a different doctor and he denied Plaintiff of due process by failing to give Plaintiff notice or the opportunity to defend."

4. "Defendant J. Gilden violated Plaintiff's 5th, 8th & 14th Amendment Rights, to the United States Constitution, denial of due process and was deliberate [sic] indifference to a serious medical need by revoking medical orders at the request of custody staff defendant T. Crane."

5. "Defendant Sparks violated Plaintiff's 8th amendment Rights, was deliberate [sic] indifference to a serious medical need. Unnecessary and wanton infliction of pain under the 8th Amendment of the United States Constitution. Also Violating ADA 42 U.S.C. § 12132 by failing to properly house Plaintiff pursuant to his ADA Accommodations."

6. "Defendants G. Montoya violated Plaintiff's 1st Amendment Rights of the United States Constitution to free speech and to petition the government without retaliation by threatening and harassing Plaintiff."

7. "Defendants Executive Dir. Rich Raemisch, Warden Mike Romero, Capt. D. Williams and Lt. D. Eggers all violated Plaintiff's 1st & 8th Amendment Rights to the United States Constitution."

(ECF No. 15).

According to Plaintiff, on or about September 28, 2017, he filed a complaint against Sgt. Martin and Defendant Sgt. Crane for "Falsifying Records/ Discrimination." After an investigation, Sgt Crane and Sgt Martin were separated from working together

4

in cell house 3. Since then, Plaintiff alleges that Defendant Crane has retaliated against him by interfering with his medical affairs and giving his cell to another inmate.

On February 16, 2018, Plaintiff was called to the office by Defendant Lt. Eggers, who informed him that his doctor's order of "Sit or Lay for Count" due to severe back pain had been revoked. According to Plaintiff, Defendant Crane orchestrated the entire ordeal to have the doctor's orders revoked because she had a grudge against Plaintiff. Defendant Crane influenced Defendant Eggers to get involved and contact medical staff (Defendant Dr. Magnuson) to revoke the medical orders.

On February 17, 2018, Plaintiff filed a complaint for "HIPAA Violation/ Medical Interference/ Retaliation." On March 28, 2018, Defendant Nurse Practitioner Jane Gilden rewrote the order that Plaintiff could sit for count. According to Plaintiff, Defendant Crane stated, in front of other offenders, "Let's see how long that will last." Defendant Crane then contacted NP Gilden and coerced her to rescind her order, which she did.

On May 15, 2018, just six days after Plaintiff and Defendant Capt. D. Williams had a meeting concerning his February 17, 2018 complaint, Plaintiff was packed out to be sent to Denver Reception Diagnostic Center (DRDC) for a hospital appointment. According to Plaintiff, prison protocol is that CDOC is supposed to hold an offender's cell for at least 10 days if he leaves the facility for a medical trip. Prior to leaving, Plaintiff spoke to Sgt. Griffen about holding Plaintiff's cell, which was a bottom bunk and consistent with Plaintiff's ADA Accommodations.

After returning from the hospital, no more than 24 hours later, Plaintiff learned that Defendant Crane had Plaintiff moved out of the cell house, and filled Plaintiff's bottom bunk with another offender who was not bottom bunk restricted. Plaintiff alleges

that he discovered that Defendant Crane stated to Sgt Griffen on May 15, 2018, "Fuck Montgomery, move that 'Son-of-a-Bitch' out of CH-3."

As a result, Plaintiff was housed in cell house 5, which is a temporary transition unit and is not suitable to Plaintiff's ADA Accommodations. His ADA Accommodations are low bunk, low tier and elevator access where available due to an unstable gait. Cell house 5 is only accessible through the use of stairs. Inmates need to use stairs to get their food, use the phone, take a shower, and take their medication. Plaintiff voiced his concerns to Defendant Sgt Sparks, who is responsible for housing assignments, but he failed to take any action.

Plaintiff was then sent to cell house 1, where Sgt. Martin and Sgt. Grooms worked, both of whom had issues with Plaintiff because of his first complaint. Plaintiff was only in the cell house for fifteen minutes before he had a run in with Sgt. Grooms and Sgt. Martin over a button up shirt. As a result, Plaintiff was placed in segregation for three days and then he returned to cell house 5, which is the cell house that requires the regular use of stairs and is not appropriate for Plaintiff's ADA Accommodations. Plaintiff alleges he "is a person with severe physical disabilities, multiple medical restrictions and ADA Accommodations."

On June 1, 2018, Plaintiff fell down a flight of stairs while coming back from the shower in cell house 5. He landed on his head, was knocked unconscious, hit his right shoulder and right knee, and injured his lower back and neck. Plaintiff alleges he continues to suffer pain and memory loss as a result of the fall.

According to Plaintiff, since the drafting of the current complaint, he has received threats from Defendant C/O Montoya. On July 29, 2018, C/O Montoya came directly to Plaintiff's cell and threatened him, stating, "Since you like filing complaints I'll come back

6

and fuck with you some more, so watch out." Plaintiff reported this threat to Defendant Eggers and others.

On July 20, 2018, Defendant Dr. Magnuson wrote an order for Plaintiff's meals to be delivered to his cell due to weakness/ fall risk/ s/p concussion. On August 9, 2018, Plaintiff's food was late, tampered with, incomplete, and served in an unsanitary manner. Therefore, Plaintiff went to the chow hall to have his meal completed and served properly. Defendants Crane and Montoya saw him going to the chow hall and one of them radioed for Plaintiff to be stopped. On August 11, 2018, Sgt. Pankey told him that his doctor's orders had been revoked again. Defendant Dr. Magnuson revoked his orders based on information given to him by a prison staff member but without speaking to Plaintiff.

According to Plaintiff, Defendants Executive Dir. Rick Raemisch, Warden Mike Romero, Capt D. Williams and Lt. D. Eggers were all made aware of the constant harassments, medical interference, and threats by Defendants Crane and Montoya but they refused to intervene.

Plaintiff seeks declaratory and injunctive relief and monetary damages.

**A. Claims**

Title 42 U.S.C. § 1983 "provides a federal cause of action against any person who, acting under color of state law, deprives another of his federal rights." *Conn v. Gabbert*, 526 U.S. 286, 290 (1999). "To state a claim under [42 U.S.C. §] 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States . . . ." *West v. Atkins*, 487 U.S. 42, 48 (1988). Section 1983 is not a source of substantive rights, but provides a method to vindicate federal rights conferred elsewhere. *Albright v. Oliver*, 510 U.S. 266 (1994). "The elements necessary to

establish a § 1983 . . . violation will vary with the constitutional provision [or federal law] at issue." *Pahls v. Thomas*, 718 F.3d 1210 1225 (10th Cir. 2013) (internal quotation marks omitted).

The court emphasizes that allegations of "personal participation in the specific constitutional [or federal law] violation complained of [are] essential." *Henry v. Storey*, 658 F.3d 1235, 1241 (10th Cir. 2011); *see also Foote v. Spiegel*, 118 F.3d 1416, 1423 (10th Cir. 1997) ("[i]ndividual liability . . . must be based on personal involvement in the alleged constitutional violation."). As the Tenth Circuit has explained,

> [b]ecause § 1983 [is a] vehicle[] for imposing personal liability on government officials, we have stressed the need for careful attention to particulars, especially in lawsuits involving multiple defendants. It is particularly important that plaintiffs make clear exactly *who* is alleged to have done *what* to *whom,* . . . as distinguished from collective allegations. When various officials have taken different actions with respect to a plaintiff, the plaintiff's facile, passive-voice showing that his rights "were violated" will not suffice. Likewise insufficient is a plaintiff's more active-voice yet undifferentiated contention that "defendants" infringed his rights.

*Pahls v. Thomas*, 718 F.3d 1210, 1225-26 (10th Cir. 2013) (internal citations and quotation marks omitted).

Further, a defendant may not be held liable for the unconstitutional conduct of his or her subordinates on a theory of respondeat superior. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). Although a defendant can be liable based on his or her supervisory responsibilities, a claim of supervisory liability must be supported by allegations that demonstrate personal involvement, a causal connection to the constitutional violation,

8

and a culpable state of mind. See *Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability).

Liberally construing Plaintiff's Second Amended Prisoner Complaint, he asserts the following claims: (1) Retaliation/ free speech claim (against Defendants Crane, Montoya, Raemisch, Romero, Williams, and Eggers) ; (2) Eighth Amendment claim of deliberate indifference to serious medical needs and/ or cruel and unusual punishment (against Defendants Crane, Eggers, Magnuson, Gilden, Sparks, Raemisch, Romero, and Williams); (3) Due Process claim (against Defendants Crane, Eggers, Magnuson, and Gilden); and (4) ADA violations (against Defendant Sparks).

### 1. Retaliation

Prison officials may not retaliate against an inmate for exercising his constitutional rights. See *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998). "This principle applies even where the action taken in retaliation would be otherwise permissible." *Smith v. Maschner,* 899 F.2d 940, 948 (10th Cir.1990). In order to state a cognizable retaliation claim, Plaintiff must allege specific facts that demonstrate: (1) he was engaged in constitutionally protected activity, (2) Defendant's actions caused him to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) Defendant's adverse actions were substantially motivated as a response to Plaintiff's constitutionally protected activity. See *Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007); *Allen v. Avance*, 491 F. App'x 1, 6 (10 th Cir. 2012). Filing a prison grievance qualifies as "constitutionally protected activity" under the First Amendment. *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010). However, "[m]ere allegations of constitutional retaliation will not suffice; plaintiff[ ] must rather allege specific facts showing retaliation because of the exercise of the prisoner's

9

constitutional rights." *Id.* at 1191 (quoting *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1991)). Therefore, to satisfy the third prong, Plaintiff was required to allege specific facts to establish that "but for the retaliatory motive, the incidents to which he refers ... would not have taken place." *Peterson,* 149 F.3d at 1144 (internal quotation marks omitted).

In this case, the retaliation claims against Defendants Raemisch, Romero, Williams, and Eggers are based on allegations that they were made aware of the actions of Defendants Crane and Montoya (including harassment, medical interference and threats) but they failed and/or refused to intervene or take disciplinary or other action. He also alleges that defendant Eggers was "directly involved" with the constant harassment, medical interference and threats by Defendants Crane and Montoya. These allegations by Plaintiff fail to adequately allege that Defendants Raemisch, Romero, Williams, and Eggers personally participated in retaliation. Defendants cannot be liable based on a theory of respondeat superior and Plaintiff has failed to demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind by these defendants. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability). Thus, I recommend the retaliation claim against Defendants Raemisch, Romero, Williams, and Eggers be dismissed as legally frivolous.

Further, the retaliation claim against Defendant Montoya is based on alleged threats from Defendant Montoya as a result of Plaintiff filing this action. According to Plaintiff, Defendant Montoya said, "Since you like filing complaints I'll come back and fuck with you some more, so watch out." There are no allegations that besides this verbal threat, Defendant Montoya ever took any adverse actions towards Plaintiff.

Thus, Plaintiff has failed to adequately allege that the verbal threat by Defendant Montoya caused him to suffer "an injury that would chill a person of ordinary firmness from continuing to engage in that activity." As a result, I recommend that the retaliation claim against Defendant Montoya be dismissed as legally frivolous.

Summary dismissal of the retaliation claim against Defendant Crane does not appear to be appropriate at this time. Thus, I recommend the retaliation claim against Defendant Crane be drawn to a presiding judge and, if applicable, a magistrate judge.

### 2. 8th Amendment claims: Deliberate indifference to serious medical needs and/or Cruel and Unusual Punishment

Under the Eighth Amendment, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)); *see also Clemmons v. Bohannon*, 956 F.2d 1523, 1527 (10th Cir. 1992) (noting the core areas entitled to protection pursuant to the Eighth Amendment include food, shelter, sanitation, personal safety, medical care, and adequate clothing). The Eighth Amendment is violated when a prison official acts with deliberate indifference to a substantial risk of serious harm to an inmate. *Id.* at 825, 828. An Eighth Amendment claim must satisfy two requirements. "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" *Id.* at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). Second, "a prison official must have a 'sufficiently culpable state of mind.'" *Id.* This second requirement is subjective, rather than objective: "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate

health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. Simple negligence and even gross negligence are not sufficient to support an Eighth Amendment claim. *See Berry v. City of Muskogee*, 900 F.2d 1489, 1495 (10th Cir. 1990). Furthermore, mere disagreement with prison officials regarding medical care also does not satisfy the subjective prong of a deliberate indifference claim. *See Callahan v. Poppell*, 471 F.3d 1155, 1160 (10th Cir. 2006) (prisoners do not have a constitutional right to a particular treatment).

The Eighth Amendment claim against Defendants Raemisch, Romero, and Williams is based on allegations that they were made aware of the actions of Defendants Crane and Montoya (including harassment, medical interference and threats) but they failed and/or refused to intervene or take disciplinary or other action. These allegations by Plaintiff fail to adequately allege that Defendants Raemisch, Romero, and Williams personally participated in an Eighth Amendment claim of deliberate indifference to serious medical needs. Defendants cannot be liable based on a theory of respondeat superior and Plaintiff has failed to demonstrate personal involvement, a causal connection to the constitutional violation, and a culpable state of mind by these defendants. *See Schneider v. City of Grand Junction Police Dept.*, 717 F.3d 760, 767-69 (10th Cir. 2013) (discussing standards for supervisory liability). Thus, I recommend the Eighth Amendment claim against Defendants Raemisch, Romero, and Williams be dismissed as legally frivolous.

As to Defendants Magnuson and Gilden, Plaintiff alleges that they Dr. Magnuson and Nurse Gilden revoked Plaintiff's medical orders, at the request of prison officials, without examining or speaking to Plaintiff. However, none of Plaintiff's allegations

indicate that Defendants Magnuson and Gilden had a sufficiently culpable state of mind. There are no allegations that they knew Plaintiff faced a serious risk of harm if they revoked the medical orders. Therefore, I recommend that the Eighth Amendment claim against Defendants Magnuson and Gilden be dismissed as legally frivolous.

Similarly, the claim against Defendant Crane is that she interfered with Plaintiff's medical orders and that her actions caused medical orders of "Sit or Lay for count" to be revoked, and later a medical order of Plaintiff being served his meals in his cell to be revoked. Plaintiff also alleges that Defendant Crane's actions caused him to be moved from a cell that accommodated his ADA requirements and he was forced to move to a cell that required the use of stairs. As a result, he fell down the stairs and injured himself. However, Plaintiff's allegations fail to adequately assert that Defendant Crane knew Plaintiff faced a risk of serious harm if his medical orders for "sit or lay for count" and/or being served his meals in his cell were revoked or that he faced a risk of serious harm if his cell, which met his ADA accommodations, was filled with another inmate when Plaintiff was on a medical trip. As there are no allegations of Defendant's Crane sufficiently culpable state of mind as to the risk of serious harm to Plaintiff, I recommend that the Eighth Amendment claim against her be dismissed as legally frivolous.

As to the Eighth Amendment claim against Defendant Eggers, Plaintiff alleges that Defendant Eggers was persuaded by Defendant Crane to get involved with his medical affairs. Thus, after being persuaded by Defendant Crane, Defendant Eggers contacted Defendant Dr. Magnuson to have Plaintiff's medical orders revoked. Plaintiff also alleges that as a supervisor, Defendant Eggers was aware of the harassment, medical interference, and threats by Defendants Crane and Montoya, but he failed to take action. These factual allegations against Defendant Eggers fail to support an

13

arguable Eighth Amendment claim. There are no allegations that Defendant Eggers had a culpable state or mind. Plaintiff failed to adequately allege that Defendant Eggers knew Plaintiff faced a serious risk of harm if his medical orders were revoked or he was moved to another cell. Thus, I recommend the Eighth Amendment claim against Defendant Eggers be dismissed as legally frivolous.

The Eighth Amendment claim asserted against Defendant Sparks does not appear to be appropriate for summary dismissal. Therefore, I recommend the Eighth Amendment claim against Defendant Sparks be drawn to a presiding judge and, if applicable, a magistrate judge.

### 3. ADA violations

"The proper defendant in a claim under Title II of the ADA is the public entity itself or an official acting in his or her official capacity on behalf of the public entity." *Nasious v. Colo. - Office of Governor Ritter*, No. 09-CV-01051-REB-KMT, 2011 WL 2601015, at *3 (D. Colo. June 29, 2011) (citing *Everson v. Leis,* 556 F.3d 484, 501 (6th Cir. 2009)). The ADA claim against Defendant Sparks in his official capacity does not appear to be appropriate for summary dismissal at this time. Therefore, I recommend the claim be drawn to a presiding judge.

### 4. Due process

The Fifth Amendment provides that no person shall "be deprived of life, liberty, or property, without due process of law." U.S. Const. Amend. V. As Plaintiff's life and property are not at issue, his due process claim is apparently based on a liberty interest. "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty' ...." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). An inmate possesses a liberty interest in avoiding transfer to (or retention in) more adverse

conditions of confinement only when those conditions represent an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Wilkinson*, 545 U.S. at 221-23; *see also Sandin v. Conner*, 515 U.S. 472, 484 (1995). The court must consider several nondispositive factors in determining whether a certain confinement imposes atypical and significant hardship (and thus a liberty interest in avoiding such confinement). *Estate of DiMarco v. Wyo. Dep't of Corrs., Div. of Prisons*, 473 F.3d 1334, 1342 (10th Cir. 2007); *see also Rezaq v. Nalley,* 677 F.3d 1001, 1012 n.5 (10th Cir. 2012). The factors include whether (1) the confinement relates to and furthers a legitimate penological interest, such as safety or rehabilitation; (2) the conditions of placement are extreme; (3) the placement increases the duration of confinement . . . ; and (4) the placement is indeterminate. *Estate of DiMarco*, 473 F.3d at 1342. "[A]ny assessment [of these factors] must be mindful of the primary management role of prison officials who should be free from second-guessing or micro-management from the federal courts." *Id*. The determination of whether a liberty interest exists is a fact-driven assessment that accounts for the totality of conditions presented by a given inmate's sentence and confinement. *Rezaq*, 677 F.3d at 1012.

Plaintiff alleges that once his medical orders were written, he had a liberty interest in them. He fails to explain how his medical orders affected his liberty. He further fails to cite to any caselaw holding that a prisoner's medical orders constitute a liberty interest. As such, I recommend that Plaintiff's due process claim against all defendants be dismissed as legally frivolous.

### III.     Recommendations

For the reasons set forth herein, this Magistrate Judge respectfully

RECOMMENDS that Claims Two, Three, Four, Six, and Seven be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). It is

FURTHER RECOMMENDED that Claim Five, with the exception of the Eighth Amendment claim and the ADA violation claim against Defendant Sparks, be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). It is

FURTHER RECOMMENDED that Claim One, with the exception of the First Amendment retaliation claim against Defendant Crane, be dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B)(i). It is

FURTHER RECOMMENDED that Defendants Raemisch, Romero, Williams, Eggers, Montoya, Magnuson, and Gilden be dismissed as parties to this action. It is

FURTHER RECOMMENDED that the Eighth Amendment claim against Defendant Sparks, in Claim Five, and the First Amendment claim against Defendant Crane, in Claim One, be drawn to a presiding judge and, if applicable, to a magistrate judge. *See* D.C.COLO.LCivR 8.1(c).

DATED May 20, 2019, at Grand Junction, Colorado.

BY THE COURT:

_____
Gordon P. Gallagher
United States Magistrate Judge